## IN THE UNITED STATES DISTRICT COURT FOR THE
### DISTRICT OF SOUTH CAROLINA
### CHARLESTON DIVISION

| | |
|---|---|
| **CITY OF NEW BEDFORD, MASSACHUSETTS,** | MDL No. 2:18-mn-2873-RMG |
| **Plaintiff,** | This Document Relates To: |
| **v.** | **Case No.**  2:23-cv-05093-RMG |
| **AGC CHEMICALS AMERICAS INC.; ANGUS FIRE ARMOUR CORPORATION; ARCHROMA U.S., INC.; ARKEMA INC.; BASF CORPORATION; BUCKEYE FIRE EQUIPMENT CO.; CARRIER GLOBAL CORPORATION; CHEMDESIGN PRODUCTS, INC.; CHEMGUARD, INC.; CHEMICALS INC.; CHUBB FIRE, LTD.; CIBA, INC. (F/K/A CIBA SPECIALTY CHEMICALS CORPORATION); CLARIANT CORP.; DEEPWATER CHEMICALS, INC.; DYNAX CORP.; KIDDE FIRE FIGHTING, INC.; KIDDE PLC INC.; NATIONAL FOAM, INC. (A/K/A CHUBB NATIONAL FOAM); NATION FORD CHEMICAL COMPANY; RAYTHEON TECHNOLOGIES CORPORATION; THE ANSUL COMPANY; TYCO FIRE PRODUCTS LP; UTC FIRE & SECURITY AMERICAS CORPORATION, INC.; WILLIAMS FIRE & HAZARD CONTROL, INC; JOHN DOE DEFENDANTS 1-50,** | **COMPLAINT**  **JURY TRIAL DEMANDED** |
| **Defendants.** | |

Plaintiff, City of New Bedford, Massachusetts, files this Complaint against the Defendants named herein and in support thereof alleges as follows:

## SUMMARY OF THE CASE

1.      Plaintiff brings this action for damages, contribution and reimbursement of costs incurred, and which continue to be incurred, to address the presence of Per- and polyfluoroalkyl substances or "PFAS" chemicals—including but not limited to Perfluorooctanoic acid ("PFOA"), Perfluorooctanesulfonic acid ("PFOS"), Perfluorohexanoic acid ("PFHxA"), Perfluoroheptanoic acid ("PFHpA"), Perfluorohexanesulfonic acid ("PFHxS"), Perfluorobutanesulfonic acid ("PFBS"), Perfluorononanoic acid ("PFNA"), as well as any and all hazardous chemicals produced by Defendants (collectively referred to herein as "PFAS"), — in the City of New Bedford, Massachusetts, public water supply system and in the groundwater that serves as supply sources for that system.  As the manufacturers and sellers of products that contain PFAS compounds, Defendants have discharged PFAS into, or are otherwise responsible for PFAS released into, the waters that serve as the supply sources for Plaintiff's public water supply systems.

2.      For years, Defendants manufactured, sold, and distributed PFAS compounds and products containing PFAS chemicals.  These products include the firefighting suppressant agent, Aqueous Film Forming Foam ("AFFF") that contains those compounds, for use at airports, military facilities, and other locations throughout the State of Massachusetts.

3.      Defendants knew, or should have known, that PFAS and related constituents in Defendants' products and by-products present unreasonable risks to human health, water quality, and the environment and of the dangers associated with these compounds. Yet, Defendants handled, discharged, and were otherwise responsible for the release of PFAS into the environment

without sufficient containment, caution, warning, testing, or use of alternative feasible products or components.

4. Defendants designed, manufactured, marketed, distributed, and/or sold AFFF Products knowing that the PFAS in these Products would be released into the environment during fire protection, training, and response activities, even when used as directed and intended by Defendants. Despite their knowledge, Defendants kept this information hidden from the public, including the Plaintiff.

5. Defendants' acts and omissions resulted in PFAS seeping into the groundwater and surface water and into a flow zone adjacent to the Plaintiff's raw water sources. As a result of the occurrence of PFAS in the environment from Defendants' products, Plaintiff has been and will be required to fund and implement capital costs, and has and will in the future incur ongoing operation and maintenance costs.

6. With regard to the Defendants' tortious and wrongful conduct herein alleged, the Defendants used the U.S. mail, interstate wires, federal and state judicial systems, regulatory filings and testimony, and other vehicles to promote, conceal, protect, and continue their tortious and wrongful conduct over many, many years.

## JURISDICTION AND VENUE

7. This Court has subject matter jurisdiction under federal diversity, pursuant to 28 U.S.C. § 1332, as the parties are completely diverse and the amount-in-controversy exceeds $75,000.

8. Plaintiff brings this civil action directly in In Re: Aqueous Film-Forming Foams Products Liability Litigation, Multi-District Litigation ("MDL") No. 2873. Plaintiff files directly in this venue, the United States District Court for the District of South Carolina, Charleston

Division, as allowed under the provisions of Paragraphs 25-29 of this Court's Case Management Order No. 3, dated April 26, 2019 (Doc. # 72).  Plaintiff designates the United States District Court for the District of Massachusetts as its "Home Venue" under 28 U.S.C. § 1391 because a substantial part of the events giving rise to this Complaint occurred in that District.  But for this Court's Order permitting direct filing in this MDL, Plaintiff would have filed in its Home Venue.

9.    Plaintiff is a municipal government entity located in New Bedford, Massachusetts.

10.    Plaintiff owns and operates a water treatment and distribution utility that serves thousands of citizens in and near the New Bedford, Massachusetts region.

11.    Plaintiff's water supply is derived from five ponds located in Lakeville and Rochester, Massachusetts. The Five Ponds from which customers in Plaintiff's service area get their drinking water are: Assawampsett Pond, Great Quittacas Pond, Long Pond, Pocksha Pont, and Little Quittacas Pond.

12.    There are 12,352 acres of watershed owned by the City of New Bedford around the Five Ponds, which the City has invested thousands to maintain in pristine condition. Plaintiff also maintains a reservoir, the High Hill Reservoir, which can store approximately 67 million gallons.

13.    As for the City's treatment plant located on Little Quittacas Pond, it is capable of treating 45 million gallons of water daily, which is pumped and distributed through the 283.4 miles of water pipes the City maintains.

14.    This action is brought by the Plaintiff to recover damages and seek other redress for harm caused by Defendants' tortious conduct relating to PFAS as outlined herein. Defendants' actions have caused and continue to cause damages to Plaintiff.

**<u>DEFENDANTS</u>**

15.    The term "Defendants" refers to all Defendants named herein jointly and severally

4

and includes presently unidentified Defendants, herein named as John Does 1-50, whose activities also contaminated and polluted the Plaintiff's raw water sources in same or similar ways as alleged herein, but also other ways such as carrying on their business operations.

16.    Defendant Kidde PLC Inc. ("Kidde") is a Delaware corporation authorized to do business in New York, with principal offices at One Carrier Place, Farmington, CT 06034. Upon information and belief, Kidde was formerly known as Williams Holdings, Inc. and/or Williams US, Inc.

17.    Defendant Kidde Fire Fighting, Inc. ("Kidde Fire Fighting") is a Pennsylvania corporation with principal offices at 400 Main Street, Ashland, MA 01721. Upon information and belief, Kidde Fire Fighting, was formerly known as National Foam, Inc., National Foam System, Inc., and/or Chubb National Foam, Inc.

18.    Defendant Carrier Global Corporation ("Carrier") is a Delaware corporation, with principal offices at 13995 Pasteur Boulevard, Palm Beach Gardens, FL 33418. Upon information and belief, Carrier was formed in March 2020 when United Technologies Corporation spun off its fire and security business. Upon information and belief, Carrier is the parent corporation of Kidde.

19.    Defendant National Foam, Inc. (a/k/a Chubb National Foam) (National Foam, Inc. and Chubb National Foam are collectively referred to as "National Foam") is a Pennsylvania corporation, with its principal place of business at 350 East Union Street, West Chester, Pennsylvania 19382.

20.    At all times relevant, National Foam manufactured fire suppression products, including AFFF that contained PFAS compounds for sale and use throughout the United States.

21.    Defendant Angus Fire Armour Corporation ("Angus Fire") is a Delaware corporation, with principal offices at 141 Junny Road, Angier, NC 27501.

22.     Defendant The Ansul Company ("Ansul") is a Wisconsin corporation, with its principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

23.     At all times relevant, Ansul manufactured fire suppression products, including AFFF that contained PFAS compounds.

24.     Defendant Tyco Fire Products L.P. ("Tyco") is a Delaware limited partnership with principal offices at 1400 Pennbrook Parkway, Lansdale, PA 19446.  Upon information and belief, Tyco is the successor-in-interest to Ansul, Inc. ("Ansul").

25.     Defendant Chemguard, Inc. is a Wisconsin corporation, having a principal place of business at One Stanton Street, Marinette, Wisconsin 54143.

26.     At all times relevant, Chemguard, Inc. manufactured fire suppression products, including AFFF that contained PFAS compounds.

27.     Defendant Chubb Fire, Ltd. ("Chubb") is a foreign private limited company, with offices at Littleton Road, Ashford, Middlesex, United Kingdom TW15 1TZ.  Upon information and belief, Chubb is registered in the United Kingdom with a registered number of 134210.  Upon information and belief, Chubb is or has been composed of different subsidiaries and/or divisions, including but not limited to, Chubb Fire & Security Ltd., Chubb Security, PLC, Red Hawk Fire & Security, LLC, and/or Chubb National Foam, Inc.

28.     Defendant UTC Fire & Security Americas Corporation, Inc. ("UTC") is a Delaware corporation with principal offices at 13995 Pasteur Blvd., Palm Beach Gardens, FL 33418.  Upon information and belief, UTC was a division of United Technologies Corporation.

29.     Defendant Raytheon Technologies Corporation ("Raytheon") is a Delaware corporation, with principal offices at Corporation Trust Center, 1209 Orange Street, Wilmington,

DE 19801. Upon information and belief, Raytheon is successor-in-interest to United Technologies Corporation.

30.     Defendant Buckeye Fire Equipment Company ("Buckeye") is a North Carolina corporation, with its principal place of business at 110 Kings Road, Kings Mountain, North Carolina 28086.

31.     At all times relevant, Buckeye manufactured fire suppression products, including AFFF that contained PFAS compounds.

32.     Defendant Ciba, Inc. (f/k/a Ciba Specialty Chemicals Corporation) ("Ciba") is a Delaware corporation, with principal offices at Corporation Trust Center, 1209 Orange Street, Wilmington, DE 19801.

33.     Defendant BASF Corporation ("BASF") is a Delaware Corporation, with principal offices at 100 Park Avenue, Florham Park, NJ 07932.  Upon information and belief, BASF is the successor-in-interest to Ciba.  Defendant BASF Corporation ("BASF") is a Delaware Corporation, with principal offices at 100 Park Avenue, Florham Park, NJ 07932.  Upon information and belief, BASF is the successor-in-interest to Ciba.

34.     Defendant Dynax Corp. ("Dynax") is a Delaware corporation, with principal offices at 103 Fairview Park Drive, Elmsford, NY 10523.

35.     Defendant Clariant Corp. ("Clariant") is a New York corporation, with principal offices at 4000 Monroe Road, Charlotte, NC 28205.

36.     Defendant Archroma U.S., Inc. ("Archroma") is a Delaware corporation with its principal offices at 5435 77 Center Dr., #10 Charlotte, NC 28217.

37.     Defendant Arkema Inc. ("Arkema") is a Pennsylvania corporation, with principal offices at 900 1st Avenue, King of Prussia, PA, 19406.

38.     Defendant ChemDesign Products, Inc. ("ChemDesign") is a Delaware corporation, with principal offices at 2 Stanton Street, Marinette, WI 54143.

39.     Defendant AGC Chemicals Americas Inc. ("AGC") is a Delaware corporation, with principal offices at 55 E Uwchlan Ave, Suite 201, Exton, PA 19341.

40.     Defendant Chemicals Inc., is a Texas corporation, with principal offices at 12321 Hatcherville Road, Baytown, TX 77521.

41.     Defendant Deepwater Chemicals, Inc. ("Deepwater") is a Delaware corporation, with principal offices at 196122 E County Road 40, Woodward, OK 73801.

42.     Defendant Nation Ford Chemical Company ("Nation Ford") is a South Carolina corporation, with principal offices at 2300 Banks Street, Fort Mill, SC 29715.

43.     Upon information and belief, Defendants Chemicals, Inc., Deepwater, and Nation Ford designed, manufactured, marketed, distributed, and sold fluorosurfactant products containing PFAS for use in the manufacture of AFFF products throughout the United States.

44.     Defendant Williams Fire & Hazard Control, Inc. ("Williams") is a Texas corporation, with principal offices at 9605 Richard Wycoff Drive, Port Arthur, TX 77640.

45.     Upon information and belief, Defendant Williams distributed and/or sold AFFF products containing PFAS throughout the United States.

46.     Upon information and belief, Defendants John Does 1-50 also manufactured, distributed, and/or sold products that contain PFAS compounds.  Plaintiff presently lacks information sufficient to specifically identify the names of Defendants sued herein under the fictitious names DOES 1 through 50.  Plaintiff will amend this Complaint to show their true names if and when they are ascertained.

### PER- AND POLYFLUOROALKYL SUBSTANCES

47.    PFAS compounds are a family of synthetic chemicals, also known as perfluorochemicals ("PFCs"), which have been used for decades to make products that resist heat, oil, stains, grease and water.

48.    PFAS chemicals were created in the 1940s and 1950s and were incorporated into certain products due to their surfactant properties. Over the years, PFAS chemicals have been sold to multiple companies for use in AFFF and a variety of other products, including stain resistant carpeting and upholstery, clothing, paper packaging for food, water and grease resistant cookware.

49.    AFFF was introduced commercially in the mid-1960s and rapidly became the primary fire-fighting foam in the United States and other parts of the world. AFFF is a Class-B firefighting foam, which is water-based and used to extinguish fires that are difficult to fight, particularly those that involve petroleum or other flammable liquids.

50.    AFFF is synthetically formed by combining fluorine free hydrocarbon foaming agents with highly fluorinated surfactants. When mixed with water, the resulting solution has the characteristics needed to produce an aqueous film that spreads across the surface of a hydrocarbon fuel. It is this film formation feature that provides fire extinguishment and is the source of the designation, aqueous film forming foam.

51.    PFAS are extremely persistent in the environment and resistant to typical environmental degradation processes. In addition, they are thermally stable synthetic organic contaminants, are likely carcinogenic, and have been shown to correlate with thyroid disease and immune deficiencies. PFAS also have high water solubility (mobility) and low biodegradation (persistence).

52.    PFAS, in particular PFOA and PFOS, have been identified as "emerging contaminants" by the United States Environmental Protection Agency ("EPA"). This term

describes contaminants about which the scientific community, regulatory agencies and the general public have a new and increasing awareness or understanding about how they move in the environment or affect public health.

53.     PFAS, like other emerging contaminants, have become the focus of active research and study, which means that new information is released periodically regarding the effects on the environment and human health as a result of exposure to the chemicals.

54.     Certain PFAS compounds, such as PFOA (which is also known as "C8" because it contains eight carbon compounds) and PFOS, have been the focus of EPA investigations.

55.     United States EPA studies have indicated that exposure to PFOA and PFOS over certain levels can result in adverse health effects, including but not limited to developmental effects to fetuses during pregnancy or to breastfed infants (e.g., low birth weight, accelerated puberty, skeletal variations), cancer (e.g., testicular, kidney), liver effects (e.g., tissue damage), immune effects (e.g., antibody production and immunity), thyroid effects and other effects (e.g., cholesterol changes).

56.     In January 2009, EPA established a drinking water Provisional Health Advisory Level ("HAL") for PFOA and PFOS, the two PFAS compounds about which it had the most toxicological data.  EPA set the Provisional HAL at 0.4 parts per billion (ppb) for PFOA and 0.2 ppb for PFOS.

57.     In connection with its emerging contaminant studies, EPA implemented an Unregulated Contaminant Monitoring Rule Number 3 in 2012 ("UCMR 3"), which was designed to collect nationwide information regarding the occurrence of PFAS contamination in the public's water supply.

58.     UCMR 3 required sampling of Public Water Systems ("PWSs") serving more than 10,000 people (i.e., large systems) and 800 representative PWSs serving 10,000 or fewer people (i.e., small systems) for 21 chemicals, including a number of PFASs, during one consecutive twelve month period in the timeframe between 2013 through 2015.

59.     Sampling under UCMR 3 used higher reporting limits than would be applicable in light of scientific information and guidance levels developed since that time, which are much lower than those employed in 2008 and 2009.

60.     In addition, the UCMR 3 sampling effort did not combine PFAS levels, thus not taking into account added effects from the presence of more than one PFAS compound.

61.     In May 2016, EPA issued new HALs for PFOA and PFOS, identifying 0.07 ppb (or 70 parts per trillion (ppt)) as the concentration of PFOA or PFOS in drinking water at or below which health effects are not anticipated to occur over a lifetime of exposure. EPA acknowledged then, and continues to acknowledge, that the studies associated with PFAS compounds are ongoing, and as such, the HALs may be adjusted based upon new information.

62.     In EPA's February 2020 PFAS Action Plan: Program Update, the agency included information on a newly approved laboratory method – Drinking Water Method 533 – for testing and detecting PFAS in drinking water. This new method allows for more effective measurement of PFAS in drinking water.

63.     In October 2021, EPA released its PFAS Strategic Roadmap, outlining the agency's proposed actions related to PFAS contamination, with a focus on researching PFAS exposures, effects, and interventions, preventing further PFAS contamination, and cleaning up existing PFAS contamination.

64.     On December 27, 2021, EPA published the final fifth Unregulated Contaminant Monitoring Rule, which will require sample collection for 29 PFAS between 2023 and 2025.

65.     On June 15, 2022, EPA issued updated HALs for four PFAS compounds, including final HALs for GenX and PFBS at 10 ppt and 2,000 ppt, respectively, and interim HALs for PFOA and PFOS at 0.004 ppt and 0.02 ppt, respectively.

66.     On August 26, 2022, EPA issued a proposal to designate PFOA and PFOS, including their salts and structural isomers, as hazardous substances under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCA").  The public comment period for the proposal closed on November 7, 2022, and EPA is in the process of reviewing comments.

67.     Regulatory agencies are also working to determine the extent of PFAS contamination within the state and participating in related discussions with federal, state and local partner agencies.

68.     While more studies have been conducted, and thus, more is known regarding PFOA and PFOS, all PFAS compounds have generally demonstrated similar characteristics to PFOA and PFOS.

69.     Although some PFAS compounds have been shown to break down, the resulting products typically end at non-biodegradable PFOA and PFOS.

70.     As manufacturers, sellers, handlers and dischargers of PFAS compounds, and products containing PFAS, Defendants knew or should have known that the inclusion of PFAS chemicals in any products presented an unreasonable risk to human health and the environment.

71.    Defendants knew or should have known that PFAS compounds are highly soluble in water, highly mobile, extremely persistent, and highly likely to contaminate water supplies if released to the environment.

72.    Defendants' prior knowledge of the adverse impacts from PFAS compounds to human health and the environment amounts to reckless disregard to human health and environmental safety.    Nonetheless, Defendants negligently and recklessly manufactured, distributed, and/or sold PFAS and products containing PFAS with no warnings or instructions on use or disposal to avoid contamination.

73.    Defendants' actions have directly resulted in contamination of raw water sources that make up Plaintiff's water supply system.  Because Defendants' PFAS has infiltrated the waters that serve as the source for Plaintiff's public water supply system, contamination of Plaintiff's water supply is recurring and continuing.

## PLAINTIFF'S WATER SYSTEM IMPROVEMENTS

74.    Plaintiff is committed to the supply of potable drinking water consistent with federal and state guidelines and requirements.  Plaintiff must therefore implement remedies to assure that the water it supplies to its customers meets these standards.

75.    As a direct result of Defendants' actions, Plaintiff has had to address PFAS contamination.  In doing so, Plaintiff has conducted and continues to conduct sampling, studies and investigations related to PFAS, which requires funding by Plaintiff, including costs for its personnel to supervise the assessments, and costs to develop PFAS treatment scenarios, and costs to analyze available alternatives.

76.    Plaintiff will continue to incur significant costs, for ongoing monitoring and any capital improvements that may be deemed necessary to reduce and/or remove PFAS contamination

to assure sufficient non-PFAS impacted water supplies.  Operation and maintenance measures for any such improvements will be required and will add further to the costs Plaintiff has incurred and will incur to address Defendants' PFAS contamination.

### FIRST CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY DEFECTIVE  DESIGN

77.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs  as if fully restated in this cause of action.

78.    Defendants were in the business of producing, making, fabricating, constructing, designing, marketing, and selling AFFF containing PFOA and/or PFOS.

79.    All of Defendants' AFFF products were manufactured for placement into trade or commerce.

80.    Defendants marketed and sold AFFF for use in controlling and extinguishing aviation, marine, fuel and other shallow spill fires.

81.    As manufacturers, Defendants owed a duty to all persons whom its products might foreseeably harm, including Plaintiff, not to market any product which is unreasonably dangerous in design for its reasonably anticipated use.

82.    By manufacturing and selling PFOA/PFOS-containing AFFF, Defendants warranted that such AFFF was merchantable, safe, and fit for ordinary purposes.

83.    Defendants breached that warranty as PFOA/PFOS-containing AFFF is unreasonably dangerous for its reasonably anticipated uses for the following reasons:

      a.    PFOA and PFOS cause extensive groundwater contamination, even when use in their foreseeable and intended manner;

      b.    Even at extremely low levels, PFOA and/or PFOS render drinking water unfit for consumption;

      c.    PFOA and/or PFOS pose significant threats to public health; and,

14

      d.     PFOA and/or PFOS create real and potential environmental damage.

84.    Defendants knew of these risks associated with PFOA and PFOS, and failed to use reasonable care in the design of its AFFF products.

85.    AFFF containing PFOA and/or PFOS poses greater danger to the environment than would be expected by ordinary persons such as the City and the general public.

86.    At all times, Defendants were capable of making AFFF that did not contain PFONPFOS. Reasonable alternative designs existed which were capable of preventing Plaintiff's damage.

87.    The risks posed by PFONPFOS-containing AFFF far outweigh the products' utility as a flame-control chemical.

88.    The likelihood that PFOA and/or PFOS-containing AFFF would be spilled, discharged, disposed of, or released onto land and contaminate the City's property and the gravity of that damage far outweighed any burden on Defendants to adopt an alternative design, and outweighed the adverse effect, if any, of such alternative design on the utility of the product.

89.    Had the City known of these dangers, it would not have purchased AFFF containing PFOA and PFOS.

90.    The City relied on Defendants' implied warranty that their AFFF products were safe for use in outdoor fire emergency scenarios and fire control exercise.

91.    As a direct and proximate result of Defendants' unreasonably dangerous design, manufacture, and sale of PFONPFOS-containing AFFF, the City has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

92.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the City's property rights.

<u>**SECOND OF ACTION**</u>
<u>**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY FAILURE TO WARN**</u>

93.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

94.    As a manufacturer of PFOA/PFOS-containing AFFF, Defendants had a duty to provide adequate warnings of the risks of these products to all persons whom its product might fqreseeably harm, including Plaintiff, the public, and public officials.

95.    PFOA/PFOS-containing AFFF is unreasonably dangerous for its reasonably anticipated uses for the following reasons:

    a.  PFOA and PFOS cause extensive groundwater contamination, even when used in their foreseeable and intended manner;

    b.  Even at extremely low levels, PFOA and/or PFOS render drinking water unfit for consumption;

    c.  PFOA and/or PFOS pose significant threats to public health; and

    d.  PFOA and/or PFOS create real and potential environmental damage.

96.    Defendants knew of the health and property damage risks associated with PFOA/PFOS- containing AFFF, and failed to provide a warning that would lead an ordinary

reasonable user or handler of a product to contemplate the dangers associated with PFOA/PFOS-containing AFFF or an instruction that would have allowed Plaintiff to avoid the damage to its

97.    Despite Defendants' knowledge of the environmental and human health hazards with PFOA and/or PFOS, Defendants failed to issue any warnings, instructions, recalls, or advice regarding PFOA/PFOS-containing AFFF to Plaintiff, governmental agencies or the public.

98.    Plaintiff would have heeded legally adequate warnings and would not have purchased products containing PFOA and PFOS, or would have taken steps to ensure PFOA/PFOS-containing AFFF was treated differently to prevent potential exposure and contamination of the environment.

99.    As a direct and proximate result of Defendants' failure to warn, Plaintiff has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

100.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies. Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the City's property rights.

### THIRD CASE OF ACTION
### NEGLIGENCE

101.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

102.    As a manufacturer and seller of PFOA/PFOS-containing AFFF, Defendants owed a duty to Plaintiff and to all persons whom its products might foreseeably harm to exercise due care in the formulation, manufacture, sale, labeling, warning, and use of PFOA/PFOS-containing AFFF.

103.    Defendants knew or should have known that PFOA and/or PFOS were leaching from AFFF used in outdoor fire control exercises and frre emergency scenarios and contaminating water resources.

104.    Despite the fact that Defendants knew that PFOA and PFOS are toxic, can contaminate water resources and are possible carcinogens, Defendants negligently:

   a. Designed, manufactured, formulated, handled, labeled, instructed, controlled, marketed, promoted, and/or sold PFOA/PFOS-containing AFFF;

   b. Issued instructions on how AFFF should be used and disposed of, thus improperly permitting PFOA and/or PFOS to contaminate the groundwater in and around the City's wells;

   c. Failed to recall and/or warn the users of AFFF of the dangers of groundwater contamination as a result of standard use and disposal of this product; and,

   d. Failed and refused to issue the appropriate warning and/or recalls to the users of PFOA/PFOS-contailiing AFFF, notwithstanding the fact that Defendants know the identity of the purchasers of the AFFF.

105.    As a direct and proximate result of Defendants' negligence, the City has suffered, and continues to suffer, property damage requiring investigation, remediation, and monitoring costs to be determined at trial.

106.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of subterranean drinking water supplies. Defendants committed each of the above described acts and omissions

18

knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the City's property rights.

### FOURTH OF CASE OF ACTION
### TRESPASS

107.    Plaintiff realleges and reaffirms each and every allegation set forth in all preceding paragraphs as if fully restated in this count.

108.    Plaintiff is the owner, operator and actual possessor of real property and improvements used for collecting drinking water.

109.    Defendants manufactured, distributed, marketed and promoted PFOA/PFOS-containing AFFF with the actual knowledge and/or substantial certainty that PFOA/PFOS-containing AFFF would, through normal use, release PFOA and/or PFOS that would migrate into subterranean groundwater, causing contamination.

110.    Defendants negligently, recklessly, and/or intentionally produced and marketed PFOA/PFOS-containing AFFF in a manner that caused PFOA and PFOS to contaminate Plaintiff's property.

111.    As a direct and proximate result of Defendants' trespass, Plaintiff has suffered and continues to suffer property damage requiring investigation, remediation and monitoring costs to be determined at trial.

112.    Defendants knew that it was substantially certain that its acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for the City's property

rights.

## **PRAYER FOR RELIEF**

WHEREFORE, PREMISES CONSIDERED, the Plaintiff, City of New Bedford, Massachusetts, as to each and every count herein, demands judgment against Defendants, and each of them, individually, jointly, and severally, and request the following relief:

a. A jury trial and finding or declaration that Defendants engaged in the tortious conduct outlined herein and/or willful, wanton, and careless disregard for the Plaintiff;

b. An award to Plaintiff for all economic and non-economic damages, including general, compensatory, consequential, and incidental damages;

c. An order for an award of attorney fees and costs, as provided by law;

d. An award of pre-judgment and post-judgment interest as provided by law;

e. Equitable or injunctive relief;

f. Compensatory damages according to proof including, but not limited to:

  i. Costs associated with the remediation or abatement of PFAS chemicals in sources of raw water;

  ii. Costs associated with treating raw water contaminated with PFAS;

  iii. Costs associated with any soil remediation of PFAS;

  iv. Diminution of property value caused by PFAS contamination;

g. Punitive damages for Defendants' willful, wanton, malicious, and/or reckless conduct causing Plaintiff's injuries;

h. An award of punitive damages in an amount sufficient to punish Defendants and to deter Defendants from engaging in similar wrongful conduct in the future; and

i. An order for all such other relief the Court deems just and proper.

## **JURY DEMAND**

Plaintiff demands a trial by jury of all issues in the matter.

Dated, this the 11th day of October, 2023,

Respectfully submitted,

Attorneys for the Plaintiff

By:

*/s/ T. Roe Frazer II*
T. Roe Frazer II
Thomas Roe Frazer III
**FRAZER PLC**
30 Burton Hills Boulevard, Suite 450
Nashville, Tennessee 37215
(615) 647-0990
roe@frazer.law
trey@frazer.law

*/s/Agostinho Riberio*
Agostinho Riberio
Nicole L. Barber
Ventura Law
235 Main Street
Danbury, CT 06810
(203) 800-8000
augie@venturalaw.com
nicole@venturalaw.com